IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**JANE DOE,**

        Plaintiffs,

v.                                        Case No. 18-cv-1067

**LAWRENCE UNIVERSITY,**

        Defendant.

## COMPLAINT

NOW COMES THE PLAINTIFF, Jane Doe, by her attorneys, Gingras, Cates & Wachs LLP by Paul A. Kinne, and hereby states the following as her Complaint in the above-referenced matter.

## NATURE OF PROCEEDINGS

1. This cause of action arises from Defendant's deliberately indifference and failure to respond to multiple reported student-on-student sexual assaults on school premises that made Jane Doe more vulnerable to sexual assault. Prior to October 28, 2017, Lawrence University was aware that Lawrence University student, Adam Jiumaleh, had sexually harassed and assaulted at least three female Lawrence University students, but it took no action against Jiumaleh. On October 28, 2017, Jiumaleh sexually assaulted Doe on campus, and then assaulted her again in early November, 2017. This action alleges violations of Title IX as well as Wisconsin state law negligence claims.

**PARTIES**

2. Jane Doe (Doe) is an adult female residing in the Eastern District of Wisconsin.

3. Lawrence University (Lawrence) is a private residential liberal arts college devoted exclusively to undergraduate education. It is located in Appleton, Wisconsin, and it receives federal financial assistant and funding as those terms are used under Title IX.

**JURISDICTION AND VENUE**

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 1331 for the Title IX claim, and supplemental jurisdiction pursuant to sec. 1367 for the state law claim.

5. These claims may be venued in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391, insofar as all of the parties live and/or conduct business in the Eastern District of Wisconsin, and the circumstances giving rise to this claim occurred in this district.

**FACTUAL ALLEGATIONS**

6. In 1972, Congress passed a law that prohibited discrimination against women in federally funded education. That law came to encompass protections against sexual assault in cases where a college was deliberately indifferent to sexual harassment and assault of female students. That law is known as Title IX.

7. Title IX provides, in part, that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

8. On September 7, 2017, 18 year old Jane Doe began her college education at Lawrence. She was excited to attend the college, given that her mother and grandfather were alumni of the university.

9. Also in September, 2017, Lawrence junior Adam Jiumaleh was beginning his academic year at Lawrence.

10. Doe worked at the campus student athletic facility, at the check-in desk. She became acquainted with Jiumaleh, who regularly exercised at the facility. They became friendly, and they would communicate via social media and would socialize periodically.

11. Unbeknownst to Doe at the time, Jiumaleh had a record of reported sexual assaults and harassment at Lawrence known to the university. Prior to October 28, 2017, at least three different female Lawrence students had accused and made reports of Jiumaleh sexually assaulting or harassing them. Jiumaleh had been banned from attending most fraternities because of his sexually aggressive behavior at those parties.

12. Prior to October 28, 2017, Lawrence had been made aware of the complaints of harassment and / or assault, but it took no action to prevent Jiumaleh from claiming another victim.

13. On October 28, 2017, Doe attended a fraternity party. Jiumaleh also attended the party. Doe did not leave the party with him. He returned to his Lawrence-owned and supervised dormitory, and Doe eventually ended up back at a friend's Lawrence-owned and supervised dormitory where she planned to spend the night with her friend.

14. Before and after leaving the fraternity party, Doe consumed alcohol. At approximately the same time she consumed alcohol after the party, she communicated with Jiumaleh. He asked her to come to his dorm room to watch videos. She indicated that she would go, but further stated that she was too drunk and did not want anything to happen if she went to his dorm. He texted that he agreed and assured her nothing would happen.

15. At approximately 3:00 a.m. on October 29, 2017, Doe went to Jiumaleh's dorm room. By the time she arrived, the alcohol she had consumed was taking effect: it rendered her intoxicated to the point where she was barely conscious.

16. While in this state, Jiumaleh removed part of Doe's clothing and sexually assaulted her by having vaginal sex with her. Doe was too intoxicated to give consent, and she only has fragmented memories of what occurred that early morning.

17. Subsequently, in early November 2017, Jiumaleh lured Doe to a study room, stating "we have to talk." During the course of this discussion, Jiumaleh attempted to manipulate Doe by accusing her of leading him on. During this meeting, Jiumaleh groped Doe against her will. He blocked her exit from the room, and stated that she could only leave if she sat on his lap and gave him a kiss. Because she was afraid for her safety and desperately wanted to leave, she complied. At that point, Jiumaleh let her go. During this confrontation between Doe and Jiumaleh, Jiumaleh admitted to Doe that he knew she was too intoxicated to give consent to their prior sexual encounter.

18. Doe shared her traumatic experiences with some of her friends, who convinced her to make a complaint. After the second assault by Jiumaleh, on November 8, 2017, Doe was convinced to make an online complaint using Lawrence's SHARE system—a system dedicated to the reporting of sexual misconduct on campus—with the help of a RLA (Residential Life Assistant) and a friend. Doe reported the two above-described incidents of sexual assault or harassment, as well as an incident when Jiumaleh intimidated Doe about providing him with prescription drugs intended for her. The November complaint was ostensibly to go to Lawrence's Title IX coordinator, Kimberly Jones.

4

Case 1:18-cv-01067-WCG   Filed 07/12/18   Page 4 of 11   Document 1

19. Having heard nothing about her complaint, later in November 2017, Doe asked her RLA about the status of her complaint. Her RLA informed Doe that he had been told that there was nothing anyone could do about the situation until there were multiple reports about the same perpetrator.

20. Ultimately, on January 5, 2018, Doe made a complaint about Jiumaleh's conduct to the Appleton Police Department. Also on January 5, Doe's parents informed Lawrence of the sexual assault and / or harassment allegations of Doe.

21. On January 8, 2018, Jane Doe's parents met with Jones and Lawrence's Dean of Students, Curt Lauderdale. Jones and Lauderdale informed the Does that they had previously received and were aware of at least three prior reports from other women who had been harassed or assaulted by Jiumaleh. At this meeting, Jones attempted to show Doe's parents that she (Jones) had just been talking on her cell phone with one of the prior victims to convince her to file a "formal" complaint. Jones explained that, without a formal complaint, Lawrence was "helpless" to take any action to prevent Jiumaleh from continuing his behavior.

22. Also at the January 8 meeting, Jones and Lauderdale informed Doe's parents that Lawrence had not done anything in reaction to Doe's November online complaint because they were unaware of it and "never received it," and that the RLA had provided erroneous information to Doe about the complaint procedure and needed more training.

23. Jones told Doe's parents that she was very happy that Doe had decided to make a formal complaint (via her report to the Appleton Police Department), because now Lawrence had a basis to remove Jiumaleh from the campus by the following weekend, "in order to prevent another rape." Jones again stated that, until a formal complaint was filed with her office,

Lawrence could do nothing in reaction to one or more complaints of sexual misconduct by one of its students on campus.

24. At the meeting on January 8, 2018, Doe's parents mentioned the name of another girl who, to the best of Doe's knowledge, also had been sexually assaulted by Jiumaleh. Jones and Lauderdale stated, "We have not heard that name before."

25. At all times relevant hereto, Lawrence's written sexual harassment policy stated, "The Lawrence University Title IX Coordinator has the authority to initiate an investigation based on allegations of discrimination, prohibited by Title IX, even absent the filing of a formal grievance, or after its subsequent withdrawal."

26. With respect to the SHARE complaints, Lawrence policy stated: "Information in [SHARE] reports is used to monitor potential threats to campus safety and to take steps to promote a safer environment. Reports are not formally investigated unless they indicate a pattern, predator, threats, violence or weapons."

27. On January 13, 2018, Doe provided a statement to Lawrence, describing the assaults on October 28 and early November by Jiumaleh. At the time, Jones again explained that she previously had not seen Doe's November 8 complaint and had panicked because she could not find it until right before the January 13, 2018 meeting. She also had asked the RLA right before the meeting to re-create a second online SHARE report regarding the two sexual assaults of Doe by Jiumaleh.

28. At the time of making her statement to Lawrence, Jones informed Doe that she was Jiumaleh's fourth assault victim. Jones told Doe that Jiumaleh victimized her in a manner similar to his other victims. Jones indicated that Jiumaleh would attempt to meet a woman at a

6

party with the intention to later assault her after she become so intoxicated that she could not resist his advances.

29. Following her statement to Jones, Jones implemented a "No Contact Order," ostensibly limiting Jiumaleh's activities on campus, including his access to all of the dormitories on campus except his own. The order also required Doe to remove herself from any place where Jiumaleh was present.

30. During the ensuing investigation of the allegations made by Doe against Jiumaleh, Lawrence informed Doe that it would waive its requirement that students live on campus, allowing her to live at home instead. Doe pointed out that if she lived off campus, she would not get the equal educational experience protected by Title IX. Lawrence alternatively offered Doe a single "safe room" on a different floor closer to her friends and RLA.

31. Unbeknownst to Doe, the ostensibly "safe room" was directly across from the room of Jiumaleh's friend. Despite the No Contact Order and assurances by Lawrence that Jiumaleh's activities and access on campus were closely monitored, Jiumaleh still visited his friend's room across from Doe's dorm room. On such occasions, Doe was trapped in her room and could not attend class, go the library or eat in the cafeteria.

32. While Doe chose the single room, she still spent most of her time at home during the ensuing four-month investigation. Lawrence has a small campus, and it was impossible to avoid Jiumaleh, who had not been removed from campus as promised by Jones. She missed classes and meals and was forced to quit her job in an attempt to avoid him during the course of the investigation. Moreover, Lawrence billed Doe's parents for a single room premium rent, but later reconsidered and billed Doe's parents the "double room" rate for the ostensibly "safe room," and would not waive such charges, despite Doe not living consistently in her "safe

7

room." Since Lawrence had waived the residency requirement and could have lived at home, Doe was made to pay for her ostensibly "safe room" in which it was virtually impossible for her to stay.

33. On March 16, 2018, Lawrence completed its investigation into Doe's complaints. During the investigation period, another victim reported a sexual assault by Jiumaleh under very similar circumstances to the assaults on Doe. In fact, the report showed that this assault occurred in close proximity to Doe's report of the two assaults, during a time when Jones had told Doe's parents that Jiumaleh would be removed from campus to prevent more rapes.

34. The investigator concluded that Jiumaleh had assaulted at least three female students at Lawrence and harassed another female student. On April 4, 2018, Lawrence provided Doe with the results of its investigation.

35. Approximately two weeks after April 4, Lawrence expelled Jiumaleh because he had engaged in a pattern of predatory sexual assaults in violation of Lawrence's Sexual Misconduct Policy and Title IX.

36. Jiumaleh's assault of Doe adversely affected her educational opportunities. His presence on campus after she reported the assaults caused her to quit her job, miss meals, and prevented her access to the library to avoid him. She would miss classes for the same reason, and moved off campus to reside at her parents' home also to avoid him. Not being on campus caused her to miss opportunities available to students on campus. Her ability to excel academically was also seriously impaired. She suffered emotional and psychological injuries that further impacted her educational opportunities and continues to suffer such injuries.

# FIRST CAUSE OF ACTION:
# VIOLATION OF TITLE IX

37. The plaintiff realleges and incorporates the foregoing paragraphs as if set forth fully herein.

38. Prior to October 28, 2017, at least three female Lawrence students had made known to Lawrence that they had been sexually assaulted or harassed by Jiumaleh. At least one of those assaults occurred in areas controlled by Lawrence. Accordingly, Lawrence had knowledge and had been put on notice that the risk of an assault like the one on Doe increased. Lawrence was aware of a pattern of the predatory assaults on female students by Jiumaleh.

39. Lawrence took no action against Jiumaleh in spite of its knowledge of the complaints that he sexually assaulted or harassed female students at Lawrence, in disregard of its own Sexual Misconduct Policy mandating investigations into a pattern of predatory or violent behavior. Lawrence did nothing to warn the student population that such patterns of predatory sexual assaults were occurring on campus. Accordingly, Lawrence exhibited deliberate indifference to assaults in a way that made Doe more vulnerable to the attack itself.

40. Both Doe and Jiumaleh were Lawrence students, and both were subject to Lawrence's rules and policies. Both assaults described in this complaint took place on property owned, controlled and managed by Lawrence. Both Doe and Jiumaleh were required to live on campus. Lawrence had the authority to expel or otherwise punish Jiumaleh. Accordingly, Lawrence had substantial control over Jiumaleh.

41. The assaults described in this complaint were so severe and objectively offensive that it deprived Doe of access to the educational opportunities and benefits provided by the school.

42. The conduct in violation of Title IX described in this complaint has caused Doe severe and permanent psychological and emotional harm.

43. The conduct in violation of Title IX described in this complaint has also caused Doe economic harm.

## SECOND CAUSE OF ACTION:
## STATE LAW NEGLIGENCE CLAIM

44. The plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

45. Lawrence owed a duty of ordinary care to Doe.

46. Alternatively, Lawrence owed Doe a special duty of care, at least in part, because she was a student at Lawrence and because she was compelled to live on campus.

47. Lawrence was negligent in its failure to respond to the information of Jiumaleh's prior assaults in its possession on or before October 28, 2017.

48. Lawrence was negligent in its failure to properly train its employees on how to properly investigate and handle claims of sexual harassment or assault.

49. Lawrence was negligent in its failure to supervise and discipline Jiumaleh after learning of his history of assaultive and harassing behavior.

50. Lawrence was negligent in its failure to monitor its online SHARE website for reports of sexual misconduct made by students and its failure to act in response to the multiple reports made against the same perpetrator, Jiumaleh.

51. Lawrence was negligent in its failure to provide information to students like Doe, as required by law.

52. This negligence has caused Doe emotional and economic harm.

WHEREFORE, the plaintiffs demand the following relief:

1. Judgment against Lawrence in amount sufficient to compensate plaintiffs for all economic and emotional losses.

2. Judgment for punitive damages against Lawrence in an amount sufficient to punish it and deter it from acting similarly in the future.

3. An award of all attorney fees and costs incurred by Doe in litigating this action.

4. Any and all other relief the Court deems just to award, including but not limited to equitable relief.

## JURY DEMAND

The plaintiffs respectfully request that this matter be tried before a jury of six (6) competent persons.

Dated this 12th day of July, 2018.

**GINGRAS CATES & WACHS LLP**
Attorneys for Plaintiff

*s/ Paul A. Kinne*
Paul A. Kinne
State Bar Number: 1021493

1850 Excelsior Drive
Madison, WI 53717
Phone: (608) 833-2632
Fax: (608) 833-2874
kinne@gcwlawyers.com