# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

JANE DOE,

     Plaintiff,

     v.                         Case No. 18-CV-1067

LAWRENCE UNIVERSITY,

     Defendant.

_____

### DEFENDANT'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES
_____

NOW COMES Defendant Lawrence University of Wisconsin ("Defendant" or "Lawrence"), by its attorneys, Michael Best & Friedrich LLP, and as and for its Amended Answer and Affirmative Defenses to the Complaint of Plaintiff Jane Doe ("Plaintiff"), hereby admits, denies, and alleges as follows:

### AMENDED ANSWER

### NATURE OF PROCEEDINGS

1. *This cause of action arises from Defendant's deliberately indifference* [sic] *and failure to respond to multiple reported student-on-student sexual assaults on school premises that made Jane Doe more vulnerable to sexual assault. Prior to October 28, 2017, Lawrence University was aware that Lawrence University student, Adam Jiumaleh, had sexually harassed and assaulted at least three female Lawrence University students, but it took no action against Jiumaleh. On October 28, 2017, Jiumaleh sexually assaulted Doe on campus, and then assaulted her again in early November, 2017. This action alleges violations of Title IX as well as Wisconsin state law negligence claims.*

1. Defendant admits that the Complaint asserts a claim pursuant to Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and a state law negligence claim. Defendant lacks knowledge or information sufficient to form a belief as to

Plaintiff's allegations that Adam Jiumaleh ("Jiumaleh") sexually assaulted her and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant denies the remaining allegations contained in Paragraph 1 of the Complaint.

## PARTIES

2. *Jane Doe (Doe) is an adult female residing in the Eastern District of Wisconsin.*

2. Defendant admits that Plaintiff is an adult female. Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's residence and therefore denies the same and demands strict proof thereof.

3. *Lawrence University (Lawrence) is a private residential liberal arts college devoted exclusively to undergraduate education. It is located in Appleton, Wisconsin, and it receives federal financial assistant and funding as those terms are used under Title IX.*

3. Defendant admits the allegations contained in Paragraph 3 of the Complaint, but alleges that its full name is Lawrence University of Wisconsin.

## JURISDICTION AND VENUE

4. *This court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 1331 for the Title IX claim, and supplemental jurisdiction pursuant to sec. 1367 for the state law claim.*

4. Defendant admits the allegations contained in Paragraph 4 of the Complaint.

5. *These claims may be venued in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391, insofar as all of the parties live and/or conduct business in the Eastern District of Wisconsin, and the circumstances giving rise to this claim occurred in this district.*

5. Defendant admits that venue is proper in this Court and that Lawrence is located in a county served by the Eastern District of Wisconsin. Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's residence and therefore denies any allegation regarding the same and demands strict proof thereof. Defendant denies the remaining allegations contained in Paragraph 5 of the Complaint.

## FACTUAL ALLEGATIONS

6.      *In 1972, Congress passed a law that prohibited discrimination against women in federally funded education. That law came to encompass protections against sexual assault in cases where a college was deliberately indifferent to sexual harassment and assault of female students. That law is known as Title IX.*

6.      Paragraph 6 contains legal conclusions, to which no response by Defendant is required. However, to the extent this Paragraph contains any factual allegations, Defendant denies the allegations contained in Paragraph 6 of the Complaint.

7.      *Title IX provides, in part, that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."*

7.      Paragraph 7 contains legal conclusions, to which no response by Defendant is required. However, to the extent this Paragraph contains any factual allegations, Defendant denies the allegations contained in Paragraph 7 of the Complaint.

8.      *On September 7, 2017, 18 year old Jane Doe began her college education at Lawrence. She was excited to attend the college, given that her mother and grandfather were alumni of the university.*

8.      Defendant admits that Plaintiff enrolled as a freshman at Lawrence beginning in September 2017. Upon information and belief, Defendant admits that Plaintiff was 18 years old at the time of her enrollment at Lawrence. Upon information and belief, Defendant further admits that Plaintiff's mother is an alumna of Lawrence. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 8 of the Complaint and therefore denies the same and demands strict proof thereof.

9.      *Also in September, 2017, Lawrence junior Adam Jiumaleh was beginning his academic year at Lawrence.*

9.      With respect to the allegations contained in Paragraph 9 of the Complaint, Defendant asserts, without waiving its right to later admit or deny the allegations, that the Family

3

Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, prohibits the non-consensual disclosure by Lawrence of information from Jiumaleh's education record.

10.     *Doe worked at the campus student athletic facility, at the check-in desk. She became acquainted with Jiumaleh, who regularly exercised at the facility.  They became friendly, and they would communicate via social media and would socialize periodically.*

10.     Defendant admits that Plaintiff has worked as a Student Desk Worker at Lawrence's Wellness Center, but Lawrence lacks knowledge or information sufficient to form a belief as to the claimed time period for the allegations contained in this Paragraph, which is not specified, and therefore demands strict proof thereof.  Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 10 of the Complaint and therefore denies the same and demands strict proof thereof.

11.     *Unbeknownst to Doe at the time, Jiumaleh had a record of reported sexual assaults and harassment at Lawrence known to the university.  Prior to October 28, 2017, at least three different female Lawrence students had accused and made reports of Jiumaleh sexually assaulting or harassing them.  Jiumaleh had been banned from attending most fraternities because of his sexually aggressive behavior at those parties.*

11.     Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff knew or did not know concerning the alleged conduct by Jiumaleh, or when Plaintiff knew the claimed information, and therefore denies all allegations regarding the same and demands strict proof thereof.  Defendant also lacks knowledge or information sufficient to form a belief as to the occurrence or timing of the vaguely referenced "sexual assaults" or "harassment" involving Jiumaleh, and therefore denies all allegations regarding the same and demands strict proof thereof.  Defendant further lacks knowledge or information sufficient to form a belief as to the identities of the "three different female Lawrence students" referenced in this Paragraph, or to form a belief as to whether, when, or to whom those "female Lawrence students" reported the alleged incidents involving Jiumaleh, and therefore denies all allegations

4

regarding the same or demands strict proof thereof. Defendant denies that Lawrence received any complaints of sexual assault or harassment involving Jiumaleh prior to October 28, 2017. Defendant also lacks knowledge or information sufficient to form a belief as to Plaintiff's allegation that Jiumaleh was "banned from attending most fraternities," or to form a belief as to Jiumaleh's alleged behavior at unspecified "parties," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant denies any remaining allegations contained in Paragraph 11 of the Complaint.

12. *Prior to October 28, 2017, Lawrence had been made aware of the complaints of harassment and / or assault, but it took no action to prevent Jiumaleh from claiming another victim.*

12. Defendant lacks knowledge or information sufficient to form a belief as to the occurrence or timing of the vaguely referenced "harassment" or "assault," or to form a belief as to the occurrence, timing, content, or identities of any of the individuals allegedly involved in the referenced reports, and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant denies that Lawrence received any complaints of harassment or assault involving Jiumaleh prior to October 28, 2017. Defendant denies the remaining allegations contained in Paragraph 12 of the Complaint.

13. *On October 28, 2017, Doe attended a fraternity party. Jiumaleh also attended the party. Doe did not leave the party with him. He returned to his Lawrence-owned and supervised dormitory, and Doe eventually ended up back at a friend's Lawrence-owned and supervised dormitory where she planned to spend the night with her friend.*

13. Defendant presently lacks knowledge or information sufficient to form a belief as to Plaintiff's claim that she and Jiumaleh attended an unspecified "fraternity party" on the referenced date, or to form a belief as to the occurrence or timing of that vaguely referenced "fraternity party." Defendant further lacks knowledge or information sufficient to form a belief as to the occurrence of the alleged actions by Plaintiff or Jiumaleh on the referenced date.

5

Defendant therefore denies all allegations contained in Paragraph 13 of the Complaint and demands strict proof thereof.

14. *Before and after leaving the fraternity party, Doe consumed alcohol. At approximately the same time she consumed alcohol after the party, she communicated with Jiumaleh. He asked her to come to his dorm room to watch videos. She indicated that she would go, but further stated that she was too drunk and did not want anything to happen if she went to his dorm. He texted that he agreed and assured her nothing would happen.*

14. Defendant lacks knowledge or information sufficient to form a belief as to the timing or occurrence of Plaintiff's alleged alcohol consumption in relation to the vaguely referenced "fraternity party," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant further lacks knowledge or information sufficient to form a belief as to the occurrence, timing, content, sender(s), or recipient(s) of the communications and/or text messages referenced in this Paragraph, and therefore denies all allegations regarding the same and demands strict proof thereof. Any written communications and/or text messages between Plaintiff and Jiumaleh speak for themselves and are the best evidence of their contents. Defendant denies that Paragraph 14 contains a complete description of the written communications between Plaintiff and Jiumaleh on the date in question. Defendant denies any remaining allegations contained in Paragraph 14 of the Complaint.

15. *At approximately 3:00 a.m. on October 29, 2017, Doe went to Jiumaleh's dorm room. By the time she arrived, the alcohol she had consumed was taking effect: it rendered her intoxicated to the point where she was barely conscious.*

15. Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 15 of the Complaint, and therefore denies all allegations contained in this Paragraph and demands strict proof thereof.

16. *While in this state, Jiumaleh removed part of Doe's clothing and sexually assaulted her by having vaginal sex with her. Doe was too intoxicated to give consent, and she only has fragmented memories of what occurred that early morning.*

6

16.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 16 of the Complaint, and therefore denies all allegations contained in this Paragraph and demands strict proof thereof.

17.     *Subsequently, in early November 2017, Jiumaleh lured Doe to a study room, stating "we have to talk." During the course of this discussion, Jiumaleh attempted to manipulate Doe by accusing her of leading him on. During this meeting, Jiumaleh groped Doe against her will. He blocked her exit from the room, and stated that she could only leave if she sat on his lap and gave him a kiss. Because she was afraid for her safety and desperately wanted to leave, she complied. At that point, Jiumaleh let her go. During this confrontation between Doe and Jiumaleh, Jiumaleh admitted to Doe that he knew she was too intoxicated to give consent to their prior sexual encounter.*

17.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 17 of the Complaint, and therefore denies all allegations contained in this Paragraph and demands strict proof thereof.

18.     *Doe shared her traumatic experiences with some of her friends, who convinced her to make a complaint. After the second assault by Jiumaleh, on November 8, 2017, Doe was convinced to make an online complaint using Lawrence's SHARE system—a system dedicated to the reporting of sexual misconduct on campus—with the help of a RLA (Residential Life Assistant) and a friend. Doe reported the two above-described incidents of sexual assault or harassment, as well as an incident when Jiumaleh intimidated Doe about providing him with prescription drugs intended for her. The November complaint was ostensibly to go to Lawrence's Title IX coordinator, Kimberly Jones.*

18.     Defendant admits that on or about November 8, 2017, Plaintiff verbally reported to a Lawrence Residence Life Assistant ("RLA") that Jiumaleh previously had non-consensual sexual intercourse with her and that on another prior occasion Jiumaleh tried to engage in physical contact with her that she resisted, including kissing. Defendant admits that Plaintiff brought another Lawrence student to the meeting with the RLA on or about November 8, 2017. Defendant further admits that the RLA prepared a Sexual Misconduct Contact Report on or about November 8, 2017, based upon Plaintiff's report of the alleged non-consensual sexual intercourse and physical contact by Jiumaleh. Defendant alleges that Sexual Misconduct Contact

7

Reports are also referred to as SHARE Reports at Lawrence. Upon information and belief, Defendant denies that Plaintiff reported any incident involving Jiumaleh and prescription drugs to the RLA at the November 8, 2017 meeting. Defendant lacks knowledge or information sufficient to form a belief as to the existence or content of the vaguely referenced "November complaint," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant alleges that pursuant to Lawrence's policy at the time period relevant to the Complaint, Lawrence's Title IX Coordinator received copies of all Sexual Misconduct Contact Reports that were actually submitted. Defendant lacks knowledge or information sufficient to form a belief as to any remaining allegations contained in this Paragraph, and therefore denies all remaining allegations contained in Paragraph 18 of the Complaint and demands strict proof thereof.

19. *Having heard nothing about her complaint, later in November 2017, Doe asked her RLA about the status of her complaint. Her RLA informed Doe that he had been told that there was nothing anyone could do about the situation until there were multiple reports about the same perpetrator.*

19. Defendant lacks knowledge or information sufficient to form a belief as to whether, when, or what Plaintiff heard about the vaguely referenced "complaint," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant lacks knowledge or information sufficient to form a belief as to the identity of the unnamed "RLA" referenced in this Paragraph. Defendant also presently lacks knowledge or information sufficient to form a belief as to the occurrence, timing, or content of the vaguely referenced communication between Plaintiff and this unnamed "RLA," and therefore denies all allegations regarding the same and demands strict proof thereof. Upon information and belief, Defendant denies that Plaintiff asked the RLA referenced in Paragraph 18 of the Complaint "about the status of her

8

complaint" in November 2017, after making the verbal report on or about November 8, 2017. Defendant denies any remaining allegations contained in Paragraph 19 of the Complaint.

20.     *Ultimately, on January 5, 2018, Doe made a complaint about Jiumaleh's conduct to the Appleton Police Department.  Also on January 5, Doe's parents informed Lawrence of the sexual assault and / or harassment allegations of Doe.*

20.     Upon information and belief, Defendant admits that Plaintiff reported an alleged sexual assault by Jiumaleh to the Appleton Police Department.  However, Defendant alleges that Plaintiff made this report to the Appleton Police Department on or after January 6, 2018. Defendant also admits that Plaintiff's mother reported an alleged sexual assault by Jiumaleh against Plaintiff.  Defendant alleges that Plaintiff's mother made this report to Lawrence on January 6, 2018.  Defendant denies any remaining allegations contained in Paragraph 20 of the Complaint.

21.     *On January 8, 2018, Jane Doe's parents met with Jones and Lawrence's Dean of Students, Curt Lauderdale.  Jones and Lauderdale informed the Does that they had previously received and were aware of at least three prior reports from other women who had been harassed or assaulted by Jiumaleh.  At this meeting, Jones attempted to show Doe's parents that she (Jones) had just been talking on her cell phone with one of the prior victims to convince her to file a "formal" complaint.  Jones explained that, without a formal complaint, Lawrence was "helpless" to take any action to prevent Jiumaleh from continuing his behavior.*

21.     Defendant admits that Kimberly Jones, Title IX Coordinator, and Curt Lauderdale, Dean of Students, met with Plaintiff's mother and father on January 8, 2018. Defendant denies the remaining allegations contained in Paragraph 21 of the Complaint.

22.     *Also at the January 8 meeting, Jones and Lauderdale informed Doe's parents that Lawrence had not done anything in reaction to Doe's November online complaint because they were unaware of it and "never received it," and that the RLA had provided erroneous information to Doe about the complaint procedure and needed more training.*

22.     Defendant denies the allegations contained in Paragraph 22 of the Complaint.

23.     *Jones told Doe's parents that she was very happy that Doe had decided to make a formal complaint (via her report to the Appleton Police Department), because now Lawrence had a basis to remove Jiumaleh from the campus by the following weekend, "in order to prevent*

9

*another rape." Jones again stated that, until a formal complaint was filed with her office, Lawrence could do nothing in reaction to one or more complaints of sexual misconduct by one of its students on campus.*

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     *At the meeting on January 8, 2018, Doe's parents mentioned the name of another girl who, to the best of Doe's knowledge, also had been sexually assaulted by Jiumaleh. Jones and Lauderdale stated, "We have not heard that name before."*

24.     Defendant admits that Plaintiff's parents provided a name to Jones and Lauderdale at the January 8, 2018 meeting of another Lawrence student whom they (Plaintiff's parents) said may have been previously sexually assaulted by Jiumaleh. Defendant admits that Lawrence had never previously received any information about any incident involving this other student and Jiumaleh, and that Jones and Lauderdale told Plaintiff's parents as much. Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff knows about the other student's interactions with Jiumaleh, and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant denies any remaining allegations contained in Paragraph 24 of the Complaint.

25.     *At all times relevant hereto, Lawrence's written sexual harassment policy stated, "The Lawrence University Title IX Coordinator has the authority to initiate an investigation based on allegations of discrimination, prohibited by Title IX, even absent the filing of a formal grievance, or after its subsequent withdrawal."*

25.     Defendant denies that it has a written "sexual harassment policy." Defendant alleges that the Lawrence University Sexual Misconduct Policy (the "Sexual Misconduct Policy") contains the quoted language. Defendant further alleges that the Sexual Misconduct Policy speaks for itself and is the best evidence of its contents. Defendant denies that Paragraph 25 contains a complete description of the contents of the Sexual Misconduct Policy. Defendant denies any remaining allegations contained in Paragraph 25 of the Complaint.

10

26.     *With respect to the SHARE complaints, Lawrence policy stated: "Information in [SHARE] reports is used to monitor potential threats to campus safety and to take steps to promote a safer environment. Reports are not formally investigated unless they indicate a pattern, predator, threats, violence or weapons."*

26.     Defendant lacks knowledge or information sufficient to form a belief as to the vaguely referenced "policy" and therefore denies all allegations contained in Paragraph 26 of the Complaint and demands strict proof thereof. Defendant alleges that any written "policy" referenced in this Paragraph speaks for itself and is the best evidence of its contents.

27.     *On January 13, 2018, Doe provided a statement to Lawrence, describing the assaults on October 28 and early November by Jiumaleh. At the time, Jones again explained that she previously had not seen Doe's November 8 complaint and had panicked because she could not find it until right before the January 13, 2018 meeting. She also had asked the RLA right before the meeting to re-create a second online SHARE report regarding the two sexual assaults of Doe by Jiumaleh.*

27.     Defendant admits that on January 13, 2018 Plaintiff met with the Outside Investigator retained by Lawrence to investigate Plaintiff's allegations against Jiumaleh. Defendant admits that Plaintiff provided information at the meeting about her allegations against Jiumaleh. Defendant further admits upon information and belief that Jones instructed the RLA to whom Plaintiff made the verbal report on or around November 8, 2017 to resubmit the Sexual Misconduct Contact Report that the RLA had prepared at the time of the verbal report. Defendant lacks knowledge or information sufficient to form a belief as to the alleged timing of the communication with the RLA, which is stated only as "right before" an unspecified "meeting," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant further alleges that on the same day that Plaintiff made the verbal report to the RLA on or about November 8, 2017, Plaintiff advised the RLA that she did not want to be contacted about the report. Defendant denies the remaining allegations contained in Paragraph 27 of the Complaint.

28.     *At the time of making her statement to Lawrence, Jones informed Doe that she was Jiumaleh's fourth assault victim.  Jones told Doe that Jiumaleh victimized her in a manner similar to his other victims.  Jones indicated that Jiumaleh would attempt to meet a woman at a party with the intention to later assault her after she become so intoxicated that she could not resist his advances.*

28.     Defendant denies the allegations contained in Paragraph 28 of the Complaint.

29.     *Following her statement to Jones, Jones implemented a "No Contact Order," ostensibly limiting Jiumaleh's activities on campus, including his access to all of the dormitories on campus except his own.  The order also required Doe to remove herself from any place where Jiumaleh was present.*

29.     With respect to any allegations contained in this Paragraph about Lawrence's directives to Jiumaleh and/or actions taken by Lawrence toward Jiumaleh, Defendant asserts, without waiving its right to later admit or deny the allegations, that FERPA prohibits the non-consensual disclosure by Lawrence of information from Jiumaleh's education record, including disciplinary and/or remedial actions.  Defendant denies that it issued any "No Contact Order" and alleges instead that it implemented a no intentional contact agreement after it received the report in January 2018 regarding alleged sexual assault by Jiumaleh against Plaintiff.  Defendant denies that any referenced "order" required Plaintiff "to remove herself from any place where Jiumaleh was present."  Defendant alleges that it advised Plaintiff that it expected her to avoid intentional contact with Jiumaleh during the investigation of her claims by removing herself from close proximity to Jiumaleh on Lawrence's campus.  Defendant denies any remaining allegations contained in Paragraph 29 of the Complaint.

30.     *During the ensuing investigation of the allegations made by Doe against Jiumaleh, Lawrence informed Doe that it would waive its requirement that students live on campus, allowing her to live at home instead.  Doe pointed out that if she lived off campus, she would not get the equal educational experience protected by Title IX.  Lawrence alternatively offered Doe a single "safe room" on a different floor closer to her friends and RLA.*

30.     Defendant admits that it offered Plaintiff, as an accommodation following her report of the alleged sexual assault by Jiumaleh, a waiver of its residential living requirement.

12

Defendant lacks knowledge or information sufficient to form a belief as to the occurrence, timing, or participants to any alleged communication between Plaintiff and unnamed representatives of Lawrence concerning this offer, and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant admits that it alternatively offered Plaintiff the opportunity to move to a single, on-campus room of her choice, and Defendant alleges that Plaintiff accepted this accommodation. Defendant denies any remaining allegations contained in Paragraph 30 of the Complaint.

31. *Unbeknownst to Doe, the ostensibly "safe room" was directly across from the room of Jiumaleh's friend. Despite the No Contact Order and assurances by Lawrence that Jiumaleh's activities and access on campus were closely monitored, Jiumaleh still visited his friend's room across from Doe's dorm room. On such occasions, Doe was trapped in her room and could not attend class, go the library or eat in the cafeteria.*

31. Defendant lacks knowledge or information sufficient to form a belief as to the identify of Jiumaleh's unidentified "friend," or to form a belief as to the timing or occurrence of Jiumaleh's visits with his "friend," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant further lacks knowledge or information sufficient to form a belief as to Plaintiff's claims that she was ever "trapped in her room," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant denies that it ever received any report from Plaintiff or anyone else that Jiumaleh violated the terms of the no intentional contact agreement. Defendant denies any remaining allegations contained in Paragraph 31 of the Complaint.

32. *While Doe chose the single room, she still spent most of her time at home during the ensuing four-month investigation. Lawrence has a small campus, and it was impossible to avoid Jiumaleh, who had not been removed from campus as promised by Jones. She missed classes and meals and was forced to quit her job in an attempt to avoid him during the course of the investigation. Moreover, Lawrence billed Doe's parents for a single room premium rent, but later reconsidered and billed Doe's parents the "double room" rate for the ostensibly "safe room," and would not waive such charges, despite Doe not living consistently in her "safe room." Since Lawrence had waived the residency requirement and could have lived at home,*

13

*Doe was made to pay for her ostensibly "safe room" in which it was virtually impossible for her to stay.*

32.     Defendant denies that the Outside Investigator retained by Lawrence took four months to investigate Plaintiff's allegations against Jiumaleh. Defendant admits that Plaintiff accepted the accommodation offered by Lawrence to move to a single, on-campus room of her choice. Defendant admits that Lawrence initially billed Plaintiff at a single-room rate but alleges that this was done in error. Defendant admits that Lawrence corrected the charge and billed Plaintiff at the cheaper double-room rate for the single room that she selected. Defendant alleges that it did so as an accommodation to Plaintiff. Defendant admits that Lawrence did not waive Plaintiff's room and board charges. Defendant lacks knowledge or information sufficient to form a belief as to the meaning of Plaintiff's allegations that she did not "liv[e] consistently" in her on-campus single room, or that "it was virtually impossible for her to stay" on campus, and therefore denies the same and demands strict proof thereof. Defendant alleges that at all times relevant to the Complaint Plaintiff utilized her Lawrence room and board. Defendant denies that Jones promised Plaintiff that Jiumaleh would be removed from campus. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 32, and Defendant therefore denies all remaining allegations contained in Paragraph 32 of the Complaint and demands strict proof thereof.

33.     *On March 16, 2018, Lawrence completed its investigation into Doe's complaints. During the investigation period, another victim reported a sexual assault by Jiumaleh under very similar circumstances to the assaults on Doe. In fact, the report showed that this assault occurred in close proximity to Doe's report of the two assaults, during a time when Jones had told Doe's parents that Jiumaleh would be removed from campus to prevent more rapes.*

33.     Defendant admits that on or about March 16, 2018, the Outside Investigator retained by Lawrence completed her investigation of the allegations asserted by Plaintiff against Jiumaleh. Defendant lacks knowledge or information sufficient to form a belief as to the identity

14

of the unnamed other "victim" vaguely referenced in this Paragraph, or to form a belief as to the meaning of the term "very similar circumstances," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant further lacks knowledge or information sufficient to form a belief as to the vaguely referenced "report" and therefore denies all allegations regarding the same and demands strict proof thereof. Any written report speaks for itself and is the best evidence of its contents. Defendant denies that it ever received any report of any alleged sexual assault by Jiumaleh that occurred after the time Plaintiff reported the alleged assaults by Jiumaleh. Defendant denies that Jones told Plaintiff's parents that Jiumaleh would be removed from campus.

34. *The investigator concluded that Jiumaleh had assaulted at least three female students at Lawrence and harassed another female student. On April 4, 2018, Lawrence provided Doe with the results of its investigation.*

34. Defendant admits that Lawrence advised Plaintiff of the results of the Outside Investigator's investigation, but Defendant alleges that Lawrence provided the investigation results to Plaintiff on or around March 26, 2018. Defendant denies the remaining allegations contained in Paragraph 34 of the Complaint.

35. *Approximately two weeks after April 4, Lawrence expelled Jiumaleh because he had engaged in a pattern of predatory sexual assaults in violation of Lawrence's Sexual Misconduct Policy and Title IX.*

35. With respect to the allegations contained in Paragraph 35 of the Complaint concerning Jiumaleh, Defendant asserts, without waiving its right to later admit or deny the allegations, that FERPA prohibits the non-consensual disclosure by Lawrence of information from Jiumaleh's education record, including any disciplinary information. Defendant further states that it lacks knowledge or information sufficient to form a belief as to the meaning of

"predatory sexual assaults" as that term is used in Paragraph 35 of the Complaint, and therefore denies all allegations regarding the same and demands strict proof thereof.

36. *Jiumaleh's assault of Doe adversely affected her educational opportunities. His presence on campus after she reported the assaults caused her to quit her job, miss meals, and prevented her access to the library to avoid him. She would miss classes for the same reason, and moved off campus to reside at her parents' home also to avoid him. Not being on campus caused her to miss opportunities available to students on campus. Her ability to excel academically was also seriously impaired. She suffered emotional and psychological injuries that further impacted her educational opportunities and continues to suffer such injuries.*

36. Defendant lacks knowledge or information sufficient to form a belief as to the occurrence or timing of Plaintiff's claim that she "moved off campus to reside at her parents' homes," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant alleges that at all times relevant to the Complaint Plaintiff maintained a residence on Lawrence's campus. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in this Paragraph, and therefore denies all remaining allegations contained in Paragraph 36 of the Complaint and demands strict proof thereof.

## FIRST CAUSE OF ACTION:
## VIOLATION OF TITLE IX

37. *The plaintiff realleges and incorporates the foregoing paragraphs as if set forth fully herein.*

37. Defendant repeats and reasserts its answers to each of the Paragraphs above as if set forth fully herein.

38. *Prior to October 28, 2017, at least three female Lawrence students had made known to Lawrence that they had been sexually assaulted or harassed by Jiumaleh. At least one of those assaults occurred in areas controlled by Lawrence. Accordingly, Lawrence had knowledge and had been put on notice that the risk of an assault like the one on Doe increased. Lawrence was aware of a pattern of the predatory assaults on female students by Jiumaleh.*

38. Defendant denies the allegations contained in Paragraph 38 of the Complaint.

39. *Lawrence took no action against Jiumaleh in spite of its knowledge of the complaints that he sexually assaulted or harassed female students at Lawrence, in disregard of*

16

*its own Sexual Misconduct Policy mandating investigations into a pattern of predatory or violent behavior. Lawrence did nothing to warn the student population that such patterns of predatory sexual assaults were occurring on campus. Accordingly, Lawrence exhibited deliberate indifference to assaults in a way that made Doe more vulnerable to the attack itself.*

40. Defendant denies the allegations contained in Paragraph 39 of the Complaint.

40. *Both Doe and Jiumaleh were Lawrence students, and both were subject to Lawrence's rules and policies. Both assaults described in this complaint took place on property owned, controlled and managed by Lawrence. Both Doe and Jiumaleh were required to live on campus. Lawrence had the authority to expel or otherwise punish Jiumaleh. Accordingly, Lawrence had substantial control over Jiumaleh.*

40. With respect to the allegations concerning Jiumaleh contained in this Paragraph, Defendant asserts, without waiving its right to later admit or deny the allegations, that FERPA prohibits the non-consensual disclosure by Lawrence of information from Jiumaleh's education record. Defendant admits that, during the time period relevant to the Complaint, Plaintiff was enrolled at Lawrence and subject to Lawrence's applicable rules and policies. Defendant lacks knowledge or information sufficient to form a belief as to the occurrence or timing of the referenced "assaults," and therefore denies all allegations regarding the same and demands strict proof thereof. Defendant admits that Lawrence maintains a residential living requirement. However, Defendant alleges that it offered Plaintiff a waiver of that requirement. Defendant lacks knowledge or information sufficient to form a belief as to the unidentified conduct for which Plaintiff claims Lawrence "had the authority to expel or otherwise punish Jiumaleh," and therefore denies all allegations regarding the same and demands strict proof thereof. Plaintiff's allegation concerning Defendant's alleged "substantial control" over Jiumaleh reflects a legal conclusion, to which no response by Defendant is required. However, to the extent Paragraph 40 contains any additional factual allegations, Defendant denies the same.

41. *The assaults described in this complaint were so severe and objectively offensive that it deprived Doe of access to the educational opportunities and benefits provided by the school.*

17

41.     Defendant denies the allegations contained in Paragraph 41 of the Complaint.

42.     *The conduct in violation of Title IX described in this complaint has caused Doe severe and permanent psychological and emotional harm.*

42.     Defendant denies the allegations contained in Paragraph 42 of the Complaint.

43.     *The conduct in violation of Title IX described in this complaint has also caused Doe economic harm.*

43.     Defendant denies the allegations contained in Paragraph 43 of the Complaint.

## SECOND CAUSE OF ACTION:
## STATE LAW NEGLIGENCE CLAIM

44.     *The plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.*

44.     Defendant repeats and reasserts its answers to each of the Paragraphs above as if set forth fully herein.

45.     *Lawrence owed a duty of ordinary care to Doe.*

45.     Paragraph 45 sets forth a legal conclusion, to which no response by Defendant is required.  However, to the extent this Paragraph contains any factual allegations, Defendant denies the allegations contained in Paragraph 45 of the Complaint.

46.     *Alternatively, Lawrence owed Doe a special duty of care, at least in part, because she was a student at Lawrence and because she was compelled to live on campus.*

46.     Paragraph 46 sets forth a legal conclusion, to which no response by Defendant is required.  However, to the extent this Paragraph contains any factual allegations, Defendant denies the allegations contained in Paragraph 46 of the Complaint.

47.     *Lawrence was negligent in its failure to respond to the information of Jiumaleh's prior assaults in its possession on or before October 28, 2017.*

47.     Defendant denies the allegations contained in Paragraph 47 of the Complaint.

48.     *Lawrence was negligent in its failure to properly train its employees on how to properly investigate and handle claims of sexual harassment or assault.*

48.     Defendant denies the allegations contained in Paragraph 48 of the Complaint.

49.     *Lawrence was negligent in its failure to supervise and discipline Jiumaleh after learning of his history of assaultive and harassing behavior.*

49.     Defendant denies the allegations contained in Paragraph 49 of the Complaint.

50.     *Lawrence was negligent in its failure to monitor its online SHARE website for reports of sexual misconduct made by students and its failure to act in response to the multiple reports made against the same perpetrator, Jiumaleh.*

50.     Defendant denies the allegations contained in Paragraph 50 of the Complaint.

51.     *Lawrence was negligent in its failure to provide information to students like Doe, as required by law.*

51.     Defendant denies the allegations contained in Paragraph 51 of the Complaint.

52.     *This negligence has caused Doe emotional and economic harm.*

52.     Defendant denies the allegations contained in Paragraph 52 of the Complaint.

*WHEREFORE, the plaintiffs demand the following relief:*

1.     *Judgment against Lawrence in amount sufficient to compensate plaintiffs for all economic and emotional losses.*

1.     Defendant denies that Plaintiff is entitled to the relief sought in this Paragraph.

2.     *Judgment for punitive damages against Lawrence in an amount sufficient to punish it and deter it from acting similarly in the future.*

2.     Defendant denies that Plaintiff is entitled to the relief sought in this Paragraph.

3.     *An award of all attorney fees and costs incurred by Doe in litigating this action.*

3.     Defendant denies that Plaintiff is entitled to the relief sought in this Paragraph.

4.     *Any and all other relief the Court deems just to award, including but not limited to equitable relief.*

4.     Defendant denies that Plaintiff is entitled to the relief sought in this Paragraph.

19

## JURY DEMAND

*The plaintiffs respectfully request that this matter be tried before a jury of six (6) competent persons.*

Plaintiff's demand for a jury represents a legal demand, to which no response by Defendant is required. Defendant further denies that this Complaint involves multiple "plaintiffs," as alleged in this Paragraph.

## AFFIRMATIVE DEFENSES

As and for its Affirmative Defenses to the Complaint, Defendant asserts as follows.

1.      Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.      Defendant cannot be found to have violated Title IX because at all times relevant to the Complaint it had policies designed to prevent and correct sex-based harassment and assault. Upon notice of the assaults alleged in the Complaint, Defendant took prompt and effective action to respond to Plaintiff's report.

3.      Upon information and belief, Plaintiff has failed and is failing to mitigate her damages.

WHEREFORE, Defendant prays that the Complaint be dismissed in its entirety, that Defendant be awarded its reasonable costs, including attorney's fees, incurred in the defense of the Complaint, and that the Court award to Defendant such further relief as the Court deems appropriate under the circumstances.

Dated this 2nd day of November, 2018.

                                MICHAEL BEST & FRIEDRICH LLP


                                By:    s/Anne M. Carroll
                                    Eric H. Rumbaugh, SBN 1015164
                                    Anne M. Carroll, SBN 1094297
                                    100 East Wisconsin Avenue, Suite 3300
                                    Milwaukee, WI 53202-4108
                                    Telephone: 414-271-6560
                                    Facsimile: 414-277-0656
                                    E-mail: ehrumbaugh@michaelbest.com
                                    E-mail: amcarroll@michaelbest.com

                                Attorneys for Defendant,
                                Lawrence University of Wisconsin

058427-0055\24508929.2